UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KYLE HALLE | CIVIL ACTION |
| VERSUS | NO. 15-5648 |
| GALLIANO MARINE SERVICE, LLC<br>And C-INNOVATION, LLC | SECTION "L" (5) |

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment filed by the Defendants, Galliano Marine Service, LLC ("Galliano Marine") and C-Innovation, LLC ("C-Innovation) (collectively, "Defendants"). (R. Doc. 15). Having considered the parties' briefs and the applicable law, the Court now issues this Order and Reasons.

### I. BACKGROUND

This lawsuit arises from Plaintiff's claim that his employer failed to pay him overtime wages. Plaintiff, Kyle Halle ("Halle"), was employed by C-Innovation[1] as an ROV (remotely operated (underwater) vehicle) Technician and ROV Supervisor, from approximately May 12, 2009 through his termination on October 12, 2015. Halle's work hitches were typically four weeks in duration, involving a 4-week voyage on an ROV support vessel. *Id.* at 2. For each of his hitches, Halle was assigned to a particular ROV support vessel, and ate, slept, lived, and worked aboard that vessel. *Id.*

ROVs are unoccupied mechanical devices tethered to a vessel and controlled by the ROV crew aboard the vessel. *Id.* ROVs are tools used to provide offshore services, including: blowout

---

[1] Galliano Marine is the name of the payroll company that provided Halle's payroll checks, W-2s and other payroll documents.

prevention backup for offshore drilling operations, inspection of subsea structures, turning subsea valves, realigning underwater connections, and placing marking beacons on the seafloor. (R. Doc. 17 at 1). ROVs are used in the oil and gas industry when the water depth or conditions preclude the use of human divers. (R. Doc. 15-1 at 2). ROV Technicians navigate and pilot the ROVs at various offshore locations while on the vessel. *Id.*

From onboard the vessel inside a shipping container converted into a ROV command center, Halle navigated, maintained, serviced, and repaired underwater vehicles that were attached to the vessel and operated remotely via video feed from vessel-based controls. (R. Docs. 15-1 at 2; 17 at 7). Halle commonly provided emergency backup for underwater drilling operations by outfitting the ROV with a "BOP intervention skid" that could be used to stop spills in case of underwater blowouts." (R. Doc. 17 at 7). That said, he did not perform any maintenance work on the ROV support vessel itself because the vessel had its own crew that performed all its maintenance work. *Id.*

ROVs are connected to the ROV support vessel by a cable, 1,500 to 2,000 feet in length, that carries video feed and control signals. *Id.* Thus, the ROV support vessel had to be positioned close enough for the ROV cable to reach the underwater target. *Id.* Accordingly, Halle would let the ROV support vessel captain know where they needed to be so that the ROV cable would reach. *Id.* This meant communicating the GPS coordinates from Defendants' customers to the captain of the vessel during his hitches. *Id.* The ROV is an appurtenance of the vessel.

II.     **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477

U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir.2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment ... by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little,* 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta,* 530 F.3d at 399.

### III. THE SEAMAN EXEMPTION UNDER THE FLSA

Halle seeks to recover unpaid overtime wages, liquidated damages, and attorney's fees and costs under the Fair Labor Standards Act ("FLSA"); he claims that Defendants failed to compensate him at a rate of time and a half when he worked for longer than 40 hours during a workweek.

The FLSA requires employers to provide compensation to an eligible employee for each hour worked in excess of 40 hours at a rate of not less than one and one-half times an employee's regular rate. 29 U.S.C. § 207(a)(1). In requesting summary relief dismissing Halle's claims seeking to recover overtime compensation under the FLSA, Defendants invoke the seaman exemption found at 29 U.S.C. § 213(b)(6), contending that Halle is exempt from FLSA's overtime compensation requirements.

Exempt from the FLSA's overtime requirements is "any employee employed as a seaman." 29 U.S.C. § 213(b)(6). The FLSA does not define "seaman" but the interpretive regulations consider a seaman to be "one who is aboard a vessel necessarily and primarily in aid of its navigation." 29 C.F.R. § 783.29. In particular, Defendants contends that Halle falls within the regulation's provision that an employee is a seaman if "(1) the employee is subject to the authority, direction, and control of the master; and (2) the employee's service is primarily offered to aid the vessel as a means of transportation, provided that the employee does not perform a substantial amount of different work." *Coffin v. Blessey Marine Servs. Inc.*, 771 F.3d 276, 280, 281 (5th Cir. 2014) (citing 29 C.F.R. § 783.31). A "substantial" amount of work is defined as "more than 20% of the time worked by the employee during the work week." 29 C.F.R. at § 783.37.

The Fifth Circuit defines a seaman's work for the purposes of the FLSA as work that is "rendered primarily as an aid in the operation of [a] vessel as a means of transportation." *Owens v. Sea River Maritime, Inc.,* 272 F.3d 698, 704 (5th Cir.2001) (citing 29 C.F.R. § 783.31). Seamen include members of the crew such as "sailors, engineers, radio operators, firemen, pursers, surgeons, cooks and stewards if, as is the usual case, their service is of the type described in § 783.31." 29 C.F.R. § 783.32. Ultimately, whether a worker is "employed as a

4

seaman" ultimately depends on "the character of work he actually performs." 29 C.F.R. § 783.33.[2]

"[T]he term 'seaman' does not have a fixed and precise meaning"; rather, "its meaning is governed by the context in which it is used and the purpose of the statute in which it is found." 29 C.F.R. § 783.29. The critical factual questions implicated by the FLSA's seamen exemption relate to the job duties that the employee performs and the proportion of their working hours that they devote to particular duties. *See Godard v. Alabama Pilot, Inc.*, 485 F.Supp.2d 1284, 1286 (D. Ala. 2007).

Generally, "workers who are primarily concerned with loading and unloading cargo" are not considered seaman within the meaning of the FLSA. *Owens*, 272 F.3d at 704 (citing 29 C.F.R. § 783.36). However, in *Coffin v. Blessey Marine Services*, the Fifth Circuit found that *vessel-based* barge tankerman were subject to the seamen exception even though a large percentage of their work duties consisted of loading and unloading cargo. 771 F.3d at 284. The Fifth Circuit distinguished the plaintiffs in *Coffin* from barge tankerman based on shore, whose work is non-exempt, because the barge tenders in *Coffin* (1) were eating, sleeping, and living on the vessel; (2) were members of the vessel's crew, working at the direction of the captain; (3) were performing loading/unloading duties that were essential to the safe efficient movement of the vessel; and (4) were "tied to a particular vessel for a voyage." *Id.* at 282-83. Although "an

---

[2] Section 783.33 further provides as follows:
> ... one is not employed as a seaman within the meaning of the Act unless one's services are rendered primarily as an aid in the operation of the vessel as a means of transportation, as for example services performed substantially as an aid to the vessel in navigation. For this reason it would appear that employees making repairs to vessels between navigation seasons would not be "employed as" seamen during such a period.... For the same and other reasons, stevedores and longshoremen are not employed as seamen.

employee is not a seaman merely because he works on a boat," the court found that the plaintiffs' "presence on the water was not incidental to the primary purpose of their employment," and therefore the exemption applied. *Id.* at 282, n.4.

## IV.   PARTIES' ARGUMENTS

Defendants contend that because Halle's work as an ROV Technician and Supervisor was "water-based, voyage-based, and vessel-based," he is a seaman exempt from the FLSA overtime provisions. (R. Doc. 15-1 at 3). In support of these contentions, Defendants submit an affidavit in which the Operations Manager of C-Innovation attests that Halle reported to the captain of the ROV support vessel during his time on the ship as "he would communicate to the captain about navigational issues as they navigated ROVs and observed the underwater conditions." (R. Doc. 15-2 at 3). Thus, Defendants argue that Halle's work meets the first prong of the seaman exemption test under the FSLA, in that he was subject to the authority, direction, and control of the master of a vessel. 29 C.F.R. § 783.31.

Defendants argue further that Halle's work qualifies under the second prong of the seaman exemption test, because his service was primarily offered to aid the vessel as a means of transportation. 29 C.F.R. § 783.31. Defendants contend that because (1) Halle was tied to a particular vessel for the duration of a voyage, and ate, slept, lived, and worked aboard that vessel; (2) his work was tied to the vessel, as he navigated, maintained, serviced, and repaired underwater vehicles that were attached to the vessel; and (3) he communicated to the captain about navigational issues as he navigated his own ROVs and observed the water conditions, contributing to the safe navigation of the vessel, his "presence on the water was not incidental to the primary purpose of [his] employment," but rather fundamentally linked to it, and the seaman exception applies. *See Coffin*, 771 F.3d at 282, n.4. Finally, Defendants argue that ROVs are an

appurtenance of the vessel and, because Halle operated, maintained, and serviced part of the vessel itself, *i.e.*, the ROV system, he is clearly a seaman.

Halle, however, argues that he is not a seaman, but rather, he is an industrial worker who works from a boat. In support of his opposition to Defendants' motion for summary judgment, Halle asserts that his duties as an ROV Technician and Supervisor were of the same character as oilfield platform servicers, seismic technicians, electronic technicians, and dredge miners, because his primary duties were related to working a tool used to service offshore oilfield operations, inspect subsea structures, and mark locations on the seafloor, rather than operate and maintain the ship as a regular member of the ship's crew. *See Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518, 519 (5th Cir. 1989) (barge workers who spent at least half of their time servicing offshore oilfield platforms by clearing flow lines are not seamen); *Walling v. W.D. Haden Co.*, 153 F.2d 196, 199 (5th Cir. 1946) (barge workers who dredge mine shells are not seamen even though they perform some duties having to with the management of the dredge boat and barges as vessels because "[t]hey are employed more in industry than shipwork"); *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151-52 (9th Cir. 1983) (seismic technician are not seamen because they are "part of the ship's scientific team, rather than navigational crew, and their primary duties were industrial, rather than nautical").

In further support of his argument, Halle notes that he was not a member of the ROV Support Vessel's crew, his duties were dedicated to the ROVs, not the support vessel, and the navigational decisions and actions were up to the ROV support vessel captain and not him. Additionally, Halle notes that, other than communicating coordinates to the vessel captain, Halle was subject to a chain of command separate and apart from vessel command; he reported to the Operations Coordinator for Defendant C-Innovation, who was land-based. (R. Doc. 17 at 8).

V.   ANALYSIS

Faced with the foregoing facts, this Court finds that Halle is a seaman exempt from FSLA's overtime wage requirements. Critical to this finding is the fact that the ROV is an appurtenance of the vessel. An appurtenance is "any identifiable item that is destined for use aboard a specifically identifiable vessel and is essential to the vessel's navigation, operation or mission." *Coakley v. SeaRiver Maritime, Inc.,* 319 F.Supp.2d 712, 714 n. 1 (E.D.La. 2004) (*quoting Scott v. Trump Indiana,* 337 F.3d 939, 944 (7th Cir. 2003)). The ROV contributed to and advance the mission and purpose of the support vessel. This is analogous to situations where courts have found that commercial divers and waitresses on cruise ships are seamen under the Jones Act because they contribute to the vessel's mission and purpose even though they do not assist in the navigation of the vessel. *See Wallace v. Oceaneering Int'l*, 727 F.2d 427, 436 (5th Cir. 1984) (holding that an oil diver who ate and slept aboard a vessel in navigation and contributed towards its mission was a seaman); *Wiora v. Harrah's Illinois Corp.*, 68 F. Supp. 2d 988, 992-94 (N.D. Ill. 1999) (holding that a waitress employed on a riverboat casino was a seaman because her duties contributed to the function of the vessel even though she did not aid in the navigation of the vessel).

"ROVs are connected to the ROV Support vessel by a cable, 1,500 feet in length, that carries video feed and control signals." (R. Doc. 17 at 7). The support vessel must be specifically outfitted in order to have an ROV system. The ROVs handling system, wench, A-frame, hydraulic power unit, vans, and control system are structurally welded to the support vessel itself. (R. Doc. 21-1). Additionally, the ROVs were essential to the mission of the support vessels. As stated above, the ROVs provided underwater services for Defendants' customers, including providing emergency back for underwater drilling operations. Other services provided

by the ROVs under Halle's supervision included inspecting underwater structures and placing marking beacons on the seafloor. Thus, Halle was operating, maintaining and servicing an appurtenance of the support vessel that was critical to the vessel's navigation, operation and mission. In further support of this finding, like the plaintiffs in *Coffin*, Halle's work was tied to a particular vessel aboard which he ate, slept, lived, and worked. He would inform the ROV support vessel captain regarding where they needed to be so that the ROV cable would reach, which affected the safe navigation of the vessel.

## VI.     CONCLUSION

Considering the foregoing, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's FLSA claims are dismissed with prejudice at Plaintiff's cost.

New Orleans, Louisiana, this 24th day of February, 2016.

_____
UNITED STATES DISTRICT JUDGE